at all, argument not to exceed 15 minutes per side. Ms. Shapiro, Ms. Alexandra Dova, and Mr. Resnick, you may proceed for the appellants. Good morning, Your Honors. My name is Lena Shapiro. I am the Director of the First Amendment Clinic at the University of Illinois College of Law. Arguing on behalf of our clients, the defendant's appellant will be Lillian Alexandrova, who will handle the primary argument for 13 minutes, and Jonathan Resnick, who will handle the rebuttal for 2 minutes. Thank you for your time. May it please the Court. I reserve 2 minutes for rebuttal. My name is Lillian Alexandrova, and I, along with my co-counsel Jonathan Resnick, represent defendant appellants. Plaintiff has weaponized the Lanham Act to stifle dissenting political speech. The District Court erred when it applied the Lanham Act to non-commercial expression, political core protected activity. This Court should reverse the entry for preliminary injunction order for two reasons. First, by its plain language, the scope of this order is very broad. It's broad enough to encompass non-commercial activity, which a majority of circuits, including this Court and Taubman Company, has stated is beyond the reach of the Lanham Act. And second, even if construed narrowly, the District Court erred when it decided that services encompass political activities. So first, by its plain language, the scope of this injunction is broad. It's an impermissible obey-the-law order. And to read from the order itself, it notes that defendants are enjoined from, quote, using the plaintiff's federally registered trademark, Libertarian Party, end quote. That's it. There is no limiting language whatsoever, no acts restrained, no time limit. The District Court granted plaintiff's motion in full. So what exactly did plaintiff request? Well, they defined infringing uses in their complaint as political party communications, political party activities, political press activity, and soliciting funds from individuals. Their cease and desist letter says much of the same. Now, opposing counsel wanted to limit core protected political activities, and the District Court allowed it. This is a problem, because six... You're making a lot of good points, but I just, as I understood the case, you can run a website, you can solicit money, you can make whatever political messaging you want, you just can't advertise yourself as the Libertarian Party of Michigan. Correct, yes. So there's no restriction on your speech in terms of you can say I want high taxes or low taxes, I want low regulation, I want high regulation. No restriction on any of that. You just can't identify yourself as someone you're not. Sure. But opposing counsel's strategic decision not to enforce certain aspects of this order doesn't necessarily make the order valid. See, it encompasses non-commercial expression. It is opposing counsel's burden to prove that any acts, any restrictions on speech, expressive conduct, are justified. Further... See, then the point I made, that you can't do the things I just said you can't do... Could you repeat the items, please? Well, maybe the injunction's overbroad, we can talk about that. But there's an underlying question of whether there was a violation to justify an injunction to begin with. I think... So I was just going to start there. Sure. I think there is an important distinction to be made here as to what the Lanham Act allows us to do. So the Lanham Act, to apply, requires there to be commercial activity. And it is opposing counsel's burden... You know the point of every time, we know what you're talking about.  But are you taking that from our Taubman case? Yes, Your Honor. What should we do with the Jack Daniels case? Because there, the Supreme Court, more recently, talked about source identification, that the Lanham Act protects source identification. Now, it wasn't in a liquor context. It wasn't in a political speech context. But it really emphasized the concept of source identification. That seems to be at the crux of this case. Sure, but it can be factually distinguished from this case. Because it dealt with commercial speech. This is a case about core protected political activity. My clients are undisputed members of the Libertarian Party. And as such, they have a right to identify as that. In Jack Daniels... Identify as members. I guess they can identify as the party itself. Sure. But I want to make this distinction very clear. Jack Daniels was about the sale of the dog chew toy, a product. My clients are trying to articulate their views on political ideas. These are very diametrically opposed ideas. And the line between commercial and non-commercial speech, it's a fuzzy one. It's true. But it's determined by the... I guess I'm just resisting the Taubman... I don't... I think I sort of understand what Taubman is trying to do. But I think we have to look at the intervening U.S. Supreme Court case. And it cites favorably that Second Circuit case, United We Stand America, which was very much about political speech. And it sort of recognized this source identification doctrine in the context of political speech. It looked positively to that Second Circuit decision. When it comes to whether or not the Lanham Act should apply, a majority of circuits, six out of seven, including this court, have stated that you cannot apply the Lanham Act beyond the commercial context. And that's important to note. Second Circuit is the one outlier? Correct, Your Honor. Supreme Court just blessed that one. Yes, Your Honor. Well, the Second Circuit was wrongly decided and factually distinguishable from this case. It was wrongly decided because it said that services encompass political activities. That result would go in violation of the First Amendment and with this court's precedent and other circuits to have reached this issue. To give you an accounting, that's the Fourth, Sixth, Eighth, Ninth, Tenth, and D.C. circuits. Six out of seven circuits and the Fifth Circuit in dictus had very similar language. Defendants did use the Libertarian Party mark. It's true. But they used it exclusively for political and expressive purposes, which is protected activity. They used that mark to criticize the opposing counsel's attempts to silence them on social media. The record shows that they made critical posts on social media in the form of memes. Record 1222 and Record 16-2. They criticized opposing counsel using the mark on newspapers. Record 1239. And they did so on local radio shows. Record 1241. They also campaigned for public office using this mark. In 2022, Mary Pazuma and Greg Semple, named defendants, were candidates for governor and secretary of state of Michigan. Record 16-9. They used the Libertarian Party mark to fundraise for legal defense in suits such as this. Record 16-1. All of these activities are political and expressive. And unfortunately, the scope of the order is broad enough to include them. Second, even if you determine that the district courts later attempts to narrow the injunction in her motion to stay order, she erred when she decided that uses and services encompass political activities. See, this is a fundamental point here. The parties disagree about what services means. Services, in our position, does not include political services. It does not include political organizing. It doesn't include distributing press releases or literature. It doesn't include soliciting funds for individuals on legal defense. This would be consistent with the First Amendment and the Fourth Circuit's view of this. Radiance Foundation versus NAACP of the Fourth Circuit noted that trademark infringement is not designed to protect mark holders from consumer confusion about a mark holder's position on political or social issues. And that is exactly what this is. Political speech, it's not commercial. The Supreme Court itself has said in Central Hudson that commercial speech is defined as expression related solely to the economic interest of the speaker and its audience. Political speech, it serves a different function. In Florida Bar versus Wentworth, the Supreme Court noted that you cannot treat commercial and non-commercial speech on the same level because to do so would be to reduce the protections normally allowed to non-commercial speech. So it would dilute the protection. So if I start a website saying I was Gretchen Whitmer, the governor of Michigan, I had all of her logos, all of her Whitmer for Michigan, whoever looked entirely like her webpage, didn't say I was not Gretchen Whitmer and I say I endorse Donald Trump for president. I list all the great reasons why I think he should be president. There's nothing anyone can do to stop that misuse of Governor Whitmer's name and mark. To be clear, there's nothing the Lanham Act could do for you. There could be other causes of action, for example, fraud, election law, but that is not before the case here. Opposing counsel chose the wrong tool. They chose trademark infringement to try and restrict their political opponent's speech. That result is improper. Why is that different than the United We Stand case from the Second Circuit? So United We Stand, as noted, was wrongly decided, but it's also factually distinguishable. In that case, it was an individual who was part of a presidential campaign, but then he was later, he was an outside member, not part of the presidential campaign, who used a slogan. And that is in direct distinction from this case, where my clients are members of the party that opposing counsel recognizes. They are undisputedly members of the Libertarian Party and have a right to identify as such. See, my opposing counsel is not harmed any more than any other political party in this country. It is normal for there to be political dissent within a party. I mean, you could just think of Mitt Romney, for example, in the Republican Party. He doesn't necessarily represent the majority view. But we allow this because our democracy needs there to be a robust debate for it to work right. And my clients have used the mark for political and expressive purposes. They've used it for criticism and commentary, something that the Fourth, Ninth Circuit all say is protected activity. Further, in McCutcheon v. FEC, the Supreme Court notes that such activity should be encouraged. The participation in electoral debate is, quote, integral to the operation of the system of government established by our Constitution. My clients use the mark to promote themselves as candidates in political races. What are the other tools you can use? Because under the Lanham Act, you can get an injunction, right? So you can address the issue and have it taken down right away. So if it wasn't the Lanham Act, you would sue for fraud or something like that. I'm not sure you can get an injunction because there are damages available. To give you an excellent example of what could have happened, I would cite to Hillsdale County Republican Executive Committee v. Wisely. This is the Michigan State Court case of late last year. And in that case, there were three elements that are missing from this one. First, it was a contractual bylaws dispute over who was the true leader of the party. Second, the district court made a finding as to who were the true leaders of the party. And third, most importantly, the injunction was narrowly tailored. This injunction is very broad. What was the legal theory? Contractual bylaws dispute, Your Honor. It was not a trademark infringement suit. So this injunction is broad enough to encompass the activities I'm mentioning to you. Soliciting political donations, that is protected activity under Buckley v. Vallejo. And these activities, I remind this court, are exactly what the opposing counsel tried to limit in their complaint and that the district court granted in full, including political party communications and soliciting funds from individuals. Is there anything to the injunction? I'm sorry, I don't mean to ask all the questions. You're saying the injunction is overbroad. Is there anything the injunction did properly? It's an obey-the-law injunction, Your Honor. What? It's an obey-the-law injunction, and it does not define the acts restrained. It would actually even violate federal rule of civil procedures. Which dissolves the entire injunction. There's not some part of it you think is valid. You said it was overbroad, which suggests to me part of it was appropriate, part of it isn't, but you're saying the whole thing goes. So ultimately we ask this court to reverse the entry of preliminary injunction order and to hold two things. First, that the Lanham Act does not apply to commercial speech, and second, that the services does not encompass political activities. Opposing counsel has weaponized the Lanham Act. Thank you. Good afternoon, Your Honor. This is not a case about political speech. It's a case about trademark law. The appellant, prior to the case being filed, represented themselves as the Libertarian Party of Michigan. The appellee is the owner of the Libertarian Party trademark as the National Libertarian Party organization and licenses one Libertarian Party of Michigan to use that trademark. That is the correct Libertarian Party of Michigan. The incorrect Libertarian Party, according to the trademark holder, represented themselves. Now, they had a website that said that, advertising, they held meetings. The trademark holder said, please stop using our trademark. Don't stop making any political speech you want to do. Please stop using the trademark. They said no. The case was filed, preliminary injunction was issued, and the court, the words of the preliminary injunction say, enjoining defendants from using the plaintiff's federally registered trademark, Libertarian Party. It doesn't say enjoining the plaintiff from saying Libertarian Party or writing down Libertarian Party or saying they're members of the Libertarian Party. Using is a very, very specific word in trademark law. You can't use it as a trademark. They can say, we are members of the Libertarian Party. As a matter of fact, all the defendants continue to say that, and the plaintiff has made no objection to that. They can run for office in the part of the Libertarian Party. As a matter of fact, one or more of the defendants are currently running for office in parts of the Libertarian Party of Michigan. The plaintiff has not objected to that. They have not used the injunction to prohibit that. Defendants have put all sorts of good and bad things about the Libertarian Party, about the National Committee, on websites, on their homepages, on Instagram posts, and the plaintiffs have done nothing about that. The injunction is very narrow and very simple. They cannot say they are the Libertarian Party because there is a different organization that is the Libertarian Party. That's all this case is about. There are lots of arguments about free speech and political rights and all those things, which if you take the words of the injunction out of context, you can make the argument that somehow they're not allowed to utter the words Libertarian Party. That was never what plaintiffs asked for, not what the court granted. They brought this issue up to the court about the overbreath, and what the court said, they asked the court to change the injunction, and the court said, finally, defendants claim that they cannot identify as members of the Libertarian Party without using the trademark, and that core to this litigation is the right to identify as a Libertarian. The court responded, not so, which shows that this issue was already before the district court. It was already decided. A year has gone by. Most of the year has gone by since the injunction. The plaintiffs have made no attempts to get the defendants to refrain from any of the activities they're engaging in. The parade of horribles is just in the minds of the defendants. It's not in the intent of the plaintiffs, nor is it in the decision from the court. The injunction simply doesn't reach to that. Assuming that everything you just said is correct, and that you've characterized everything correctly, what do we do about Taubman and the requirement for commercial activity? What about this brings us, Taubman is our precedent. It's true that some other precedents might call Taubman into question, but we're obligated to follow the precedent, and what about Taubman brings this within the commercial arena? This is not political speech. That's the expression of political opinions. It's commercial speech because the right to organize, to raise funds, to identify oneself is a commercial activity. It's not a political activity. Raising the funds that makes it a commercial activity. As many of the cases have said, that's part of what makes it the commercial activity. Do you view Taubman as in tension with some of the more recent precedent from other sources, the Supreme Court or other circuits? Yes. Commercial context isn't for sale or for profit. That's not what determines it. It's whether or not it's in commerce. Just like the GOP gets to identify as the GOP. They have a valid trademark on GOP because it's in the context of commerce, not commercial purposes. They can raise funds. They need to be able to organize. They need to be able to get a message out. They have commercial purposes for that, and the message itself is political speech. It's maybe a non-commercial message. It's the marketing of the message that's commercial? That's what makes it commercial, yes. That's what the case law says. I don't. Can I ask you about the solicitation page? Your friends on the other side, their website does have this long disclaimer that they are not you, and if they want to contribute to you, I think they include the link on how to do it. Was that enough to address any confusion concerns? It depends upon which page we're talking about. The pages are evolving over time. Prior to the injunction, no, because they claim to be the Libertarian Party and had a very small disclaimer on one subpage of a subpage that says there's some dispute. That doesn't cure claiming to be the Libertarian Party. Currently, I'm not aware of any pages they currently have, and I haven't checked recently, that claim to be the Libertarian Party. They are, and I'm trying to recall, the Party of Libertarians of Western Michigan. They are the Party of Libertarian Ideals of Southern Michigan. They have names like that. So they've complied with the injunction? They've complied with it. There were a couple of things where they didn't comply with the injunction immediately. I put their counsel on notification, and we cleared that up within a week or two of the injunction. There were a couple of things that were lingering, but since then, and again, they're running for party positions in many of the subparties of Libertarian Party. I guess we have to go back in time a little bit, but there was one point in time where they had a donation page, but then they were very explicit saying, they're not you, they're them. If they wanted to contribute to you, here's how they do it. And we have this standard disclaimer, and I'm not sure if Swaj has any concerns about confusion, because there can be no likelihood of confusion at the point of sale where a defendant conspicuously and unequivocally informs buyers of the defendant, not the plaintiff as the source of the product. So was it sufficient, at least for contribution purposes, the way that they went about disclaiming being you and identifying themselves separately? Not at the time where at the top of the page it said, the Libertarian Party of Michigan. So at the top of the page is wrong. It's not enough to go scroll through a few pages, find the contribution page, and then find the truth. Correct. Earlier on. And that's fundamental trademark law. You can't have a page that says Nike footwear, and at the bottom say, by the way, this isn't real Nike footwear, we're just kidding. You can't do that. It's trademark infringement. And so, yes, you could have a, what am I going to say, fair use, if you're doing commentary on something. And at the top it says, the page which has commentary on Nike Industries. You can use Nike Industries prominently up there to identify who you're commenting on, but the rest of the page can't be a solicitation for selling shoes, and with a little disclaimer at the bottom. So there are some fair use exceptions, but that's not. To attract people to the page by claiming to be something they're not is fundamental trademark law violation, and a small disclaimer at the bottom doesn't cure that. What's your view of the Jack Daniels case, and whether that governs here? You've got a situation where a defendant uses a trademark as a source identifier, and arguably the Lanham Act would prevail over First Amendment applications. So I'm just wondering what your thoughts are in terms of how that case applies here. I agree that the Lanham Act prevails over certain First Amendment rights. In the Jack Daniels case, they used a mark that evoked and looked like it came from Jack Daniels in a knockoff case for, I believe, a dog. And it's the misleading aspect. If the consumer is misled that this is coming from Jack Daniels, that's what creates the basis for trademark infringement. You can't knock off somebody's mark to get your own attention. Just like you can't put up keywords on an Internet search site that say you're selling Starbucks coffee, Nike shoes. Even if you can't see those words, if they're used as search terms, which directs people going there who are thinking they are purchasing Nikes, or going to a Nike store or a Starbucks store, that's a trademark violation. It's simply that. It's attracting people to something that, just like we've argued in this case, the confusion that would occur if everybody could say, I'm the GOP, I'm the Democratic Party, and here is my platform. That's not free speech. That's misdirected commercial communications. That's violations of the Lanham Act and trademark law. You're misdirecting people, giving them misinformation as the source of what's coming next. Free speech is differentiated from that in that you can make all the commentary critical or supportive that you want to about any organization at all times. You can, in public, say anything you want to about Nikes, about the quality of Starbucks coffee. That's free speech. You just can't say, it comes from me. I am Starbucks. I am Nike. You have to differentiate that. That's basics of trademark law. Thank you. Thank you. Your Honor, I have one point on rebuttal. And that is that this is not just a case or an injunction that limits who can identify as the Libertarian Party here. It is much broader. The order, read plainly, prohibits identifying as a member of the Libertarian Party and accompanying political activity because you can't use the term Libertarian Party as the injunction is written. A source identifier in selling a commercial good is different from identifying as a political ideology. And that is where Jack Daniels is differentiated from this case. That involves the use of commercial goods, commercial speech. In this case, this is a political party. The Fourth Circuit and the Radiance Foundation and the NAACP noted that trademark infringement is not the proper vehicle to help a trademark holder in maintaining their identity when the issue at hand is political or social issues. And lastly, the complaints itself and what it asked for defined the lines of the injunction from the beginning when it asked that defendants and others acting in concert with them enjoin from using advertising or publicizing any information that includes or refers to plaintiff's trademarks or any colorable imitation thereof. Therefore, the defendants request that this court... Aren't you able to refer to yourselves as Libertarians or have Libertarian thinking? Your Honor... You just can't refer to yourself as part of the official... You're not the official Libertarian Party, but you can be Libertarians with a small l. Your Honor, I understand. However, identifying with the Libertarian Party and that term Libertarian Party is essential to the defendants' expression of their Libertarian ideals. Thank you, Your Honor. We appreciate your arguments. As I said earlier, we've had two student arguments this afternoon. You do a fine job, and it makes us feel confident about the future of the legal profession. So thank you.